(No. 14391.—Reversed and remanded.)

THE CITY OF CHICAGO, Appellant, *vs.* THE GREEN MILL GARDENS, Appellee.

*Opinion filed October 21, 1922—Rehearing denied Dec. 7, 1922.*

1. MUNICIPAL CORPORATIONS—*cities have power to license, tax and regulate amusements.* Under the provisions of section 1 of article 5 of the Cities and Villages act, cities and villages are granted specific power to license, tax and regulate amusements and places of amusement.

2. SAME—*the meaning of the word "amusement."* The word "amusement" is synonymous with diversion, entertainment, recreation, pastime or sport, and includes dancing.

3. SAME—*conducting of dance cannot be declared a nuisance—question of fact.* Public dances are not in their nature nuisances and cannot be so declared by ordinance, but the manner of conducting them may be productive of annoyance and injury to the public, and whether they are so conducted as to become nuisances must be settled as a question of fact.

4. SAME—*an ordinance regulating dancing as an amusement is valid—burden of proof.* Public open-air dances are subjects of regulation by cities and villages, and an ordinance regulating such amusement is valid if reasonable, and the burden is on the party alleging the invalidity of the ordinance to prove it is unreasonable.

5. SAME—*what may be considered in determining reasonableness of ordinance or statute.* The question of the reasonableness of a statute or ordinance, or of the validity of the same, is for the court, and in determining that question the court should have regard to all the existing circumstances or contemporaneous conditions, the objects sought to be attained and the necessity or want of necessity for its adoption.

6. SAME—*construction favoring ordinance is preferred.* The presumption being in favor of the validity of a statute or of an ordinance passed in pursuance of statutory authority, when the facts shown are susceptible of two constructions, one of which will support and the other defeat the statute or ordinance, the former construction will be adopted.

7. SAME—*extent of police power.* The police power extends to the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the State.

8. SAME—*what ordinance regulating dancing is reasonable and valid.* An ordinance of the city of Chicago, known as the Dry

Cabarets ordinance, providing that all places of public amusement where performances, entertainments, dancing or skating is carried on or allowed to be carried on shall be closed on or before one o'clock A. M., is a reasonable and valid regulation of public amusements and applies to open-air cabarets where dancing is allowed, whether or not an admission fee is charged.

APPEAL from the Municipal Court of Chicago; the Hon. JOHN RICHARDSON, Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, and LOUIS P. PIQUETT, (DANIEL WEBSTER, and RUPERT F. BIPPUS, of counsel,) for appellant.

ROY D. KEEHN, (EDWARD G. WOODS, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On June 28, 1921, the city of Chicago, the appellant, brought suit against appellee, the Green Mill Gardens, incorporated, for a penalty not exceeding $200 in two counts for violation of section 5 of an ordinance of the city passed August 14, 1918, specifically charging that the appellee allowed music and dancing in its gardens until the hour of 2:30 o'clock A. M. on the dates of June 9 and 10, 1921, in said city. The cause was tried September 22, 1921, by the court without a jury. The court found the defendant not guilty and entered judgment discharging it. The court certified that the validity of a certain ordinance of the city known as the Dry Cabarets ordinance, and providing for the licensing thereof, is involved in this cause, and that in his opinion public interest requires that the appeal herein shall be taken directly to the Supreme Court, and the appeal is accordingly direct to this court.

The cause was tried on the following stipulation of facts: In June, 1921, appellee was owning and operating a restaurant at 4804-10 Broadway avenue, in Chicago. It

served therein meals and soft drinks, only. There was in the restaurant an orchestra and a platform or space kept open where dancing was permitted and was enjoyed by the patrons of appellee. In addition thereto it was accustomed to and did furnish entertainment for its patrons by professional performers, consisting of dancing and singing, and which ended at 12 o'clock, midnight. It had taken out a license for amusements covering the dates of June 9 and 10 and the entire period mentioned in any other complaint filed against it under the ordinance. It paid the city the license fee required from places of amusement similar to that conducted by it, and it customarily charged an admission, and did upon the days in question charge an admission to its restaurant. It permitted music to be played by the orchestra and dancing to be continued until the hour of 2:30 A. M., all of which was enjoyed by its patrons. No performers appeared after the hour of 12 o'clock, midnight. It was further stipulated that the facts are conceded by the parties to constitute the only violation of a municipal code of which appellee is charged, if such facts do constitute any violation thereof, and that all the cases against appellee under said ordinance other than this one shall abide the result of this case without further trial.

Section 1 of the ordinance provides that the term "public place of amusement," as used in the ordinance, shall be construed to include and to mean any building, hall, room or enclosure to which the general public may be admitted without the payment of an admission fee or charge of any kind or character, where they may engage in or witness the performance of any amateur theatrical entertainment, any exhibition, show, amusement, cabaret, entertainment, whether musical or otherwise, or any dance or skating, either by patrons or other persons. Section 2 thereof provides that no person or persons, society, club, firm or corporation, either as owner, lessee, manager, officer or agent,

shall give, conduct, produce, present, offer, permit, suffer or allow at any public place of amusement within the city of Chicago any amateur theatrical entertainment, any exhibition, show, amusement, cabaret, entertainment, act of entertainment, performance whatsoever, whether musical or otherwise, or any dance or skating, either by patrons or other persons, except as provided by the ordinance. Section 3 provides that an application in writing shall be made for a license from the city and what the application shall contain. It further provides that the general superintendent of police shall make or cause to be made an investigation of the applicant as to whether or not he is of good moral character and a suitable person to be licensed, and to recommend accordingly and refer the application to the commissioner of buildings, who shall investigate the premises for which a license is requested. Upon recommendation of said officers as to the applicant and the building, the mayor shall, if in his discretion he deems it advisable, issue or cause to be issued to such applicant a license, etc. Section 4 provides that the mayor may refuse to approve the application if the place or premises in the application be not a proper place and not constructed, maintained, operated or conducted according to the provisions of the ordinance of the city governing and controlling such places, or if the amusement or entertainment desired to be produced or offered be of an immoral or dangerous character, or if the applicant be not of good moral character. Section 5 provides that all places of public amusement defined by the ordinance shall be closed on or before the hour of one o'clock A. M., provided that upon the application of a *bona fide* and responsible organization or society and on investigation by the general superintendent of police, the mayor is authorized, in his discretion, to grant such organization or society a permit to continue dancing or any other amusement specified until three o'clock A. M., provided that no tickets shall be sold or accepted for admission after the hour of one o'clock

A. M., and provided that during the duration of the war all places of public amusement as defined in the ordinance shall close not later than one o'clock A. M. Section 6 provides that the license fee shall be from $25 to $100, depending upon the number of persons the place will seat and the number of square feet of floor space contained in the place or room. Section 7 provides that any person or persons, society, club, firm or corporation that shall violate any of the provisions of the ordinance shall be fined not less than $10 nor more than $200 for each offense, and each day such violation continues shall be regarded as a separate offense. It further provides that the mayor is authorized, in case any such person or entity violates any of the provisions of the ordinance or any of the general ordinances of the city or laws of Illinois, upon request of the general superintendent of police or the city council, to revoke any such license issued to any such person or persons, etc.

Appellee first argues that the ordinance is penal and must be strictly construed, and being so construed cannot include appellee as violating the ordinance under its stipulation. It specifically calls attention to the fact that it is not stipulated that appellee paid the license fee required by the ordinance, and that it did not stipulate that it conducts a public place of amusement as defined in the ordinance. In other words, it denies that it stipulated, in substance, that it violated the ordinance. Its contention is, in fact, that the stipulation shows that it did not violate the ordinance and that its place of amusement or business does not come under the provisions of the ordinance. This argument is based upon the supposition that section 1 of the ordinance defines all places of amusement to mean and to be any building, hall, room or inclosure to which the general public may be admitted without the payment of an admission fee or charge of any kind or character, where they may engage in or witness the performance of any amateur theatrical entertainment, any exhibition, show, amuse-

ment, cabaret, etc. Its point is that it charges an entrance fee to its restaurant, and that under said section, and within the meaning of the same, the fact that it does charge a fee takes it out of the provisions of the ordinance. Appellee's construction of the ordinance leaves out of consideration section 2 thereof. That section makes the ordinance applicable to any person or persons, society, club, firm or corporation, either as owner, lessee, manager, officer or agent, that shall give, conduct, produce, present, offer, permit, suffer or allow the conducting of any of the places of amusement therein named except as provided by the ordinance. The intent of the ordinance is that it shall apply to all persons, etc., who conduct any such places of amusement. This intent is further emphasized by the proviso of section 5, that no tickets shall be sold or accepted for admission after the hour of one o'clock A. M. It is clear that appellee violated the provisions of the ordinance. It is expressly stipulated that it permitted music to be played by the orchestra and dancing to be continued until the hour of 2:30 A. M., all of which was enjoyed by its patrons. The ordinance expressly prohibits the continuation of any amusement or entertainment, whether musical or otherwise, or any dance, after the hour of one o'clock A. M., either by patrons or other persons.

It is next argued by appellee that the ordinance is not within the powers conferred upon the city of Chicago by virtue of the Cities and Villages act. Section 1 of article 5 of said act provides that the city council in cities shall have the following powers:

"*Forty-first*—To license, tax, regulate, suppress and prohibit hawkers, peddlers, pawnbrokers, keepers of ordinaries, theatricals and other exhibitions, shows and amusements, and to revoke such license at pleasure.

"*Fifty-eighth*—To regulate places of amusement.

"*Sixty-sixth*—To regulate the police of the city or village, and pass and enforce all necessary police ordinances.

"*Seventy-eighth*—To do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease.

"*Ninety-eighth*—To pass all ordinances, rules, and make all regulations, proper or necessary, to carry into effect the powers granted to cities or villages, with such fines or penalties as the city council or board of trustees shall deem proper:  *Provided,* no fine or penalty shall exceed $200, and no imprisonment shall exceed six months for one offense."

Cities and villages are granted specific power by the aforesaid provisions to license, tax and regulate amusements and places of amusement.  Webster says that the word "amusement" is synonymous with diversion, entertainment, recreation, pastime and sport.  It certainly can not be successfully claimed that dancing to the music of an orchestra is not an amusement.  It was expressly held in *Pearson* v. *City of Seattle,* 14 Wash. 438, that a public dance is a public amusement.

But it is argued that the legislature by paragraph 58 of section 5 did not intend to include places where food and soft drinks, only, are served, as places of amusement.  That may be very true, but appellee did more than that: it permitted dancing to the music of an orchestra after one o'clock A. M., and it cannot escape from that charge because it sold soft drinks and conducted a restaurant also. If it can, why may not an owner of a restaurant who sells soft drinks defeat on the same line of argument a charge that he was illegally selling intoxicating liquor or conducting a gaming house?

It is further contended that any attempt to so regulate the use of appellee's property or place, if its place comes within the meaning of the ordinance, is clearly unreasonable because it denies it the use of its property as it may desire, without any showing that such use will be injurious to others in the same vicinity.  We may take judicial notice of the fact that the city of Chicago is a densely populated

city, and that restaurants and places of the kind that appellee conducts are not in isolated portions of the city, where residents and other persons might not be disturbed and annoyed by music and dancing at as late an hour as 2:30 A. M. We may assume, also, that the fact that other people would be disturbed and annoyed and deprived of necessary sleep and rest entered into consideration in the passage of this ordinance. But evidently that was not the sole consideration. Continued dancing till such a late hour would in itself tend to endanger the health of the patrons engaging therein, and such public places conducted at such late hours would tend to attract and congregate evilly-disposed persons at hours when the city would be least prepared with police to guard against the acts of such persons. While this court has specifically held that public picnics and open-air dances are not in their nature nuisances and can not be so declared by ordinance, still at the same time it also held that the manner of conducting them may be productive of annoyance and injury to the public; that whether they are so conducted as to become a nuisance must be settled as a question of fact. This conclusion necessarily leads to the further conclusion that such amusements ought to be, and may be, subjects of regulation by cities and villages. It is clear, also, that the statute does give them power to regulate such amusements. The statute giving such power is therefore clearly violative of no constitutional provision, and the ordinance is valid unless it is unreasonable, and clearly so.

If the ordinance is unreasonable and void it was the duty of appellee to point out and show by competent evidence, or otherwise if it could, wherein or in what particular the ordinance is unreasonable or invalid. This court has said in repeated rulings, that if we have a doubt of the power of the legislature to make an enactment we will resolve that doubt in favor of the legislature. The question of the reasonableness of a statute or ordinance, or of the

validity of the same, is one for the court, and in determining that question the court should have regard to all the existing circumstances or contemporaneous conditions, the objects sought to be attained, and the necessity or want of necessity for its adoption.   The presumption being in favor of the validity of a statute or of an ordinance passed in pursuance of competent statutory authority, when the facts shown are susceptible of two constructions, one of which will support and the other defeat a statute or ordinance, the former will be adopted.   (*Harmon* v. *City of Chicago*, 140 Ill. 374.)   Appellee has pointed out nothing tending to show this ordinance to be unreasonable or invalid except the fact that under the stipulation it is stated that it is running a restaurant where soft drinks, only, are sold.   It is not charged with running a restaurant where soft drinks are sold after one o'clock A. M.   It is charged with conducting its place after that hour by permitting dancing therein to the music of an orchestra, and that was proved.   If the stipulation were that it only conducted its restaurant and sold soft drinks after that hour it could not have been convicted under this ordinance.

A municipality may derive its powers from one subsection of section 1 of article 5 of the act relating to cities and villages or from two or more of said sub-sections. The ordinance aforesaid is plainly sustainable under subsections 41 and 58.   It may also be sustained under subsections 66 and 78.   The police power extends to the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the State. (*Hannibal and St. Joseph Railroad Co.* v. *Husen*, 95 U. S. 465.)   It is said in that case that "by the general police power of the State persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity of the State, of the perfect right of a legislature to do which no question ever

was, or upon acknowledged general principles ever can be, made, so far as natural persons are concerned. It may also be admitted that the police power of the State justifies the adoption of precautionary measures against social evils."

In *Gundling* v. *City of Chicago,* 177 U. S. 183, the court said: "Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business or occupation they shall apply are questions for the State to determine, and their determination comes within the proper exercise of the police power by the State, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law they do not extend beyond the power of the State to pass, and they form no subject for Federal interference."

In *Metropolis Theater Co.* v. *City of Chicago,* 228 U. S. 61, the court said: "To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive yet be free from judicial interference. The problems of government are practical ones, and may justify, if they do not require, rough accommodations,—illogical, it may be, and unscientific. But even such criticism should not be hastily expressed. What is best is not always discernible. The wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to our judicial review. It is only its palpably arbitrary exercise which can be declared void under the fourteenth amendment."

Appellee not having shown any ground for claiming that the ordinance is unreasonable or invalid, and it appearing that the ordinance is a reasonable one authorized by the legislature, violating no provisions of the State or Federal

constitution, we hold that it is valid and binding and that appellee is guilty as charged.

The judgment of the municipal court is reversed and the cause is remanded.   *Reversed and remanded.*

---

(No. 14479.—Reversed and remanded.)
THE MADISON COAL CORPORATION, Appellant, *vs.* THE PITTSBURGH COAL COMPANY, Appellee.

*Opinion filed October 21, 1922—Rehearing denied Dec. 7, 1922.*