[No. A015565. First Dist., Div. Two. Feb. 4, 1986.]

BRUCE COHEN et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF
SAN FRANCISCO et al., Defendants and Respondents.

**COUNSEL**

Jeffrey S. Ross, Sheila L. Sakamoto, Lawrence A. Gibbs, Lynne N. Henderson and Friedman, Sloan & Ross for Plaintiffs and Appellants.

Stephen E. Cone, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz as Amici Curiae on behalf of Plaintiffs and Appellants.

George Agnost, City Attorney, Burk E. Delventhal, Judith A. Boyajian, Thomas J. Owen and Mara E. Rosales, Deputy City Attorneys, for Defendants and Respondents.

James K. Hahn and Gary R. Netzer, City Attorneys (Los Angeles), Lewis N. Unger, Assistant City Attorney, Pamela Victorine, Deputy City Attorney, Stanley E. Remelmeyer, City Attorney (Torrance), Robert J. Logan, City Attorney (San Jose), James A. McKelvey, City Attorney (Fresno), Rene A. Chouteau, City Attorney (Santa Rosa), Frank Gillio, City Attorney (Millbrae), Burt Glennon, City Attorney (Culver City), Elizabeth Strauss, City Attorney (Napa), Rodney R. Atchison, City Attorney, (Santa Cruz), Kenneth C. Scheidig, City Attorney (Concord), Steven F. Nord, City Attorney (Merced), Robert K. Booth, Jr., City Attorney, (Los Altos), William J. Adams, City Attorney (Palm Springs), Edwin J. Moore, City Attorney (Santa Clara), Thomas Wood, City Attorney (Costa Mesa), John W. Witt, City Attorney (San Diego), LeRoy Knutsun, City Attorney (La Mesa), Gerald Sperry, City Attorney (Stockton), David J. Erwin, City Attorney (Palm Desert, Rancho Mirage, Indio & Coachella), Robert K. Rogers, Jr., City Attorney (South San Francisco), Robert W. Parkin, City Attorney (Long

■■■■■■■■■■■■

Beach), J. Dennis Crabb, City Attorney (South Lake Tahoe), Jerome F. Coleman, City Attorney (Burlingame), R. R. Campagna, City Attorney (Flower), Charles D. Haughton, City Attorney (Beverly Hills), A. D. Allen, Assistant City Attorney, Steven A. Amerikaner, City Attorney (Santa Barbara), Alan Burns, City Attorney (Fountain Valley), and Eric Lauterer, City Attorney (Garden Grove), as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**SMITH, J.**—This appeal from the denial of a preliminary injunction against enforcement of an ordinance of the City and County of San Francisco regulating escort services, Municipal Police Code sections 1074.1 through 1074.30, is before us for the second time. Following our first decision holding the ordinance invalid as entirely preempted by state law, the Supreme Court granted hearing and, in *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277 [219 Cal.Rptr. 467, 707 P.2d 840], held that only two, severable parts of the ordinance were preempted. (*Id.,* at pp. 292, 304.) The court declined to reach further constitutional arguments directed against the remainder of the ordinance, however. Instead, the court retransferred the cause to us with directions to consider those issues on the merits but only if we should first find that the superior court abused its discretion in denying the application for preliminary injunction on the implied ground of failure to satisfy the "interim harm" factor necessary for issuance of the injunction. (Pp. 289-290.) We will conclude that the superior court did not so abuse its discretion and, accordingly, will not address the constitutional arguments.

### BACKGROUND

We recapitulate part of the Supreme Court's summary of how the ordinance operates. "The ordinance imposes a permit requirement upon any person engaged in, conducting, or carrying on the operation of an 'escort service.' (§ 1074.2.) An 'escort service' is defined as '[a]ny business, agency or person who, for a fee, commission, hire, reward or profit, furnishes or offers to furnish names of persons, or who introduces, furnishes or arranges for persons, who may accompany other persons to or about social affairs, entertainments or places of amusement, or who may consort with others about any place of public resort or within any private quarters.' (§ 1074.1.) Similarly, an 'escort' is defined as '[a]ny person who, for a fee, commission, hire, reward or profit, accompanies other persons to or about social affairs, entertainments or places of amusement or consorts with others about any place of public resort or within any private quarters.' (*Ibid.*)

"In order to obtain an escort service permit, the applicant must fill out an application which calls for a personal description, a current and two previous addresses and a prior business or employment record. Also, three portrait photographs must be furnished, a listing of all criminal convictions except minor traffic violations must be provided, written proof of majority must be shown, and '[s]uch other identification and information necessary to discover the [foregoing] matters' must be submitted. (§ 1074.4.) The chief of police is permitted to take the applicant's fingerprints and additional photographs and may 'confirm, by independent investigation, the truth and accuracy of the . . . information [provided in the application].' (*Ibid.*)" (*Cohen, supra,* 40 Cal.3d at p. 284.)

"The ordinance also requires any escort or other employee who works in an escort service in San Francisco or performs any such service in the city to secure a permit. The employee permit application requires information similar to that required for a service permit. (§§ 1074.5, 1074.7.)" (*Cohen, supra,* at pp. 284-285.)

Within 14 days after a noticed public hearing, a permit must issue "unless: (1) the operation 'would not have complied with all applicable laws, including but not limited to, the Building, City Planning, Housing and Fire Codes of the City . . . and the rules and regulations adopted by the Chief of Police pursuant to this Article;' (2) the applicant has had a prior license revoked by the city, the state, or the Alcoholic Beverage Control Commission; or (3) the applicant has been convicted of any offense which (i) requires sex offender registration (Pen. Code, § 290), (ii) involves the 'use of force and violence upon the person of another' or sexual misconduct with children, or (iii) is described in Penal Code sections 311, 647, subdivision (a), 647a, 647, subdivision (b), 315, 316, 318 or 266 through 267. (§ 1074.12.) . . . .

"Beyond the permit process, the ordinance requires that both clients and employees be at least 18 years old (§§ 1074.16, 1074.17) and that each escort service keep a daily register containing the identity and hours of employment of each employee. The register must contain the 'true' name and address of each patron, along with the hours, the fee charged, and the location where the service was used. This register is 'at all times during business hours . . . subject to inspection' by the police and health departments and must be maintained on the premises for one year. (§ 1074.21.)" (*Cohen, supra,* at p. 285.)

"Once issued, a permit may be revoked after a hearing if the permittee has engaged in conduct which violates any provision of the ordinance,[1]

---

[1] Those provisions of the ordinance prohibiting any escort from engaging "in any type of

any implementing rules and regulations adopted by the chief of police, or any state or local law. Revocation may result 'in any case where the permittee or licensee refuses to permit any duly authorized police officer . . . to inspect the premises or the operations therein . . . .' (§ 1074.15.)" (*Cohen, supra,* at pp. 285-286, fn. omitted.)

## DISCUSSION

■ "The granting or denying of a preliminary injunction does not constitute an adjudication of the ultimate rights in controversy. [Citations.] Generally, the ruling on an application for a preliminary injunction rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal absent a showing that it has been abused. [Citations.]" (*Cohen, supra,* 40 Cal.3d at p. 286.)

■ Trial courts should evaluate two interrelated factors when deciding whether to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued. (*Cohen, supra,* at p. 286.) "When a trial court denies an application for a preliminary injunction, it implicitly determines that the plaintiffs have failed to satisfy either or both of the 'interim harm' and 'likelihood of prevailing on the merits' factors. ■ On appeal, the question becomes whether the trial court abused its discretion in ruling on *both* factors. Even if the appellate court finds that the trial court abused its discretion as to one of the factors, it nevertheless may affirm the trial court's order if it finds no abuse of discretion as to the other." (*Id.,* at pp. 286-287.)

In our first decision, we expressly declined to consider the "interim harm" factor, relying on Court of Appeal and Supreme Court decisions which had not considered that factor when presented with only questions of law on undisputed material facts. The Supreme Court in *Cohen,* however, distinguished those decisions as ones in which the parties apparently had not disputed the point on appeal. The court then clarified that an assessment of interim harm is always necessary where the issue is in dispute. (*Cohen, supra,* 40 Cal.3d at pp. 287-289.) Accordingly, and since respondents in this case did raise the point in this court, we have been directed to consider the "interim harm" factor and, if we find no abuse of discretion, to affirm

criminal conduct with a customer" (§ 1074.22, subd. (A)) and forbidding anyone to aid and abet a violation of the ordinance (to the extent that such violation consists of a violation of state law) (§ 1074.23) are now declared preempted and hence invalid. (*Cohen, supra,* 40 Cal.3d at p. 292.)

the order denying the preliminary injunction. (*Id.*, at p. 289.) Only if we find an abuse of discretion are we to consider the "likelihood of prevailing on the merits" factor, which in this case presents pure questions of law that can be addressed as though the case had proceeded to trial.[2] (P. 290.)

Beyond the preemption argument addressed in *Cohen,* appellants attack the ordinance as unconstitutionally infringing or "chilling" protected rights to free speech and association by, inter alia, (1) denying all minors permits, (2) defining too vaguely and broadly who and what conduct is covered (especially language describing persons who "accompany" or "consort with" others for remuneration), (3) operating as a prior restraint (the permit requirement), (4) potentially intruding on the attorney-client relationship for those clients who, for a fee, are referred to an attorney for consultation, and (5) delegating unfettered discretion to the chief of police to promulgate and enforce rules and regulations. The requirements of kept registers and unannounced police inspections are challenged as unconstitutional abridgements of rights to privacy, counsel, and freedom from unreasonable searches and seizures. The ordinance's criminal sanctions are challenged as unsupported by adequate notice of what conduct is proscribed. The ordinance is also alleged to single out "escort services" for coverage, in violation of equal protection principles.

 "To qualify for preliminary injunctive relief plaintiffs must show irreparable injury, either existing or threatened. (*City of Santa Monica* v. *Superior Court* [(1964)] 231 Cal.App.2d 223, 227 . . . .) . . . [¶] Additionally, preliminary injunction is not an appropriate remedy '[t]o prevent the execution of a public statute, by officers of the law, for the public benefit' or '[t]o prevent the exercise of a public or private office, in a lawful manner, by the person in possession.' (Civ. Code, § 3423; Code Civ. Proc., § 526.) While these general strictures do not preclude the issuance of preliminary injunctive relief when the constitutionality of a statute or ordinance is challenged, nevertheless, '. . . trial courts should be extremely cautious . . . to enjoin law enforcement officials from enforcing an ordinance obviously approved and adopted by duly elected representatives of the people for the purpose of promoting and protecting public morality *prior to a trial on the merits.*' (Italics in original.) (*City of Santa Monica* v. *Superior Court, supra,* at 226.)" (*7978 Corporation* v. *Pitchess* (1974) 41 Cal.App.3d 42, 46 [115 Cal.Rptr. 746].)

---

[2]Three aspects of the Supreme Court's treatment of the case are particularly perplexing. First, neither in their petition for rehearing in this court nor in their petition in the Supreme Court did respondents raise the "interim harm" issue. The high court evidently urged the issue itself. Second, that court was in the identical position as this court to review the record on this point, and yet it chose to return the case to us (see *Cohen, supra,* 40 Cal.3d at p. 304, conc. and dis. opn. by Mosk, J.). Third, the high court violated its own rule by addressing the merits of the preemption issue without first finding an abuse of discretion.

There are two plaintiffs-appellants in this action. ▉ Bruce Cohen sues as a resident taxpayer under Code of Civil Procedure section 526a to enjoin the illegal expenditure of public funds. Nowhere in the complaint or elsewhere has Cohen asserted any threat or injury to himself personally from the ordinance. His interest appears to be limited to his taxpayer's pocketbook, an interest which is sufficient to confer statutory standing to maintain this action and bring it to a final judgment permanently enjoining unlawful expenditures (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 267-270 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]) but which to our knowledge has never been held to substitute for the high degree of existing or threatened injury required for the *prejudgment* injunctive relief sought here.

Citing the policy that section 526a is to be liberally construed to achieve its remedial purpose of allowing taxpayers to challenge illegal government activity without a showing of special damage to the particular taxpayer (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 268-269 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; see also *White* v. *Davis* (1975) 13 Cal.3d 757, 764-765 [120 Cal.Rptr. 94, 533 P.2d 222]), appellants insist that we must "conclusively presume" irreparable injury and a balance of interim harms in their favor. All that is required to trigger the presumption, they argue, is a bare showing that public funds are about to be expended in an unconstitutional or otherwise illegal manner. The proposed standard would automatically equate illegal spending with a right to preliminary injunctive relief. For two reasons, that cannot be. First, the *Cohen* decision demands consideration of interim harm as a related *but distinct* question from the underlying merits of the challenge. The proposed rule would leave only the consideration of illegality, and the balance of harms would automatically follow in every case. Second, treating the balance of interim harms as a conclusive presumption leaves no room for a true *balancing*. The preliminary injunction would have to issue in every case where some illegality appeared, no matter how strong the countervailing showing of harm.

It follows that appellants could not prevail on the balance of interim harms factor by virtue of Cohen's taxpayer standing alone, and we have already seen that Cohen claimed no further actual or threatened harm to himself personally. No affidavits or other documents were presented to show that persons in the community at large felt imminently threatened. The ordinance had not yet been enforced, and the chief of police had not adopted rules or regulations. Appellants' worst fears that the ordinance would be applied indiscriminately or enforced unreasonably were speculative. No one had yet been threatened with arrest, prosecution, or the denial or loss of a permit. There was no showing, for example, that employees of escort services at that time included minors or persons with prior offenses that might preclude either their employment or the business obtaining a permit. The sole show-

ing, in fact, was the face of the ordinance which, among other things, called for patrons to register, and for applicants and employees to provide the required identification and background information. The trial court presumably balanced the extent to which such disclosures might inhibit the exercise of First Amendment freedoms (cf. *White* v. *Davis, supra,* 13 Cal.3d 757, 767-772 [chilling effect of unrestricted undercover police surveillance in university classrooms noted]) against respondents' showing of harm should enforcement be enjoined pending the litigation.

Appellant Keegan G. Low does allege threatened personal harm but only to the extent that the ordinance might affect his occupation as an attorney practicing within the city. Low declares that he risks prosecution in his practice—particularly where he is referred potential clients through the Lawyer Referral Service of the Bar Association of San Francisco—in that he is unable to determine from reading the ordinance whether his "conduct in associating, consulting, and consorting with clients referred to [him] from the Lawyer Referral Service, falls within the definitions contained in the ordinance." He claims to be unsure whether to apply for a permit before taking future referrals.

The Supreme Court has in essence resolved this claim by dismissing a similar argument, made in the preemption context, that the ordinance is an invalid attempt to regulate the practice of law. The court stated: "This claim is without merit. . . . [¶] No provision of the escort service ordinance explicitly or implicitly regulates the practice of law. An 'escort' is defined as any person who, for money or other consideration, may 'accompan[y] [or] consort[] with others about any place of public resort or within any private quarters.' (§ 1074.1, subd. (b).) *Even a broad reading of that definition cannot reasonably be said to include attorneys engaged in the practice of law.*" (*Cohen, supra,* 40 Cal.3d 277, 302-303, italics added.)[3] Moreover, Captain Diarmud J. Philpott specifically declared in opposition to the application for preliminary injunction that, as the individual charged with responsibility for enforcing the ordinance,[4] he did not understand the ordi-

---

[3]"It is no doubt quite common for a lawyer during the course of the lawyer-client relationship to 'accompany' a client to a 'place of public resort' such as a restaurant or social club. The client may also pay the lawyer for his or her time during such an outing, as well as the expenses of the meeting. However, even in such circumstances, it is rare that the lawyer is paid for providing the client with social company. Rather, it is far more likely that he or she is paid for providing legal advice during the meeting. The rendering of legal services which may involve an occasional social meeting in a public place does not transform the attorney-client relationship into one of 'escort' and 'patron' as those terms are used in the ordinance.

"The same reasoning applies even if the 'accompanying' or 'consorting' takes place 'within any private quarters' such as the lawyer's office or the client's place of business." (*Cohen, supra,* 40 Cal.3d at pp. 303-304.)

[4]Captain Philpott is the commanding officer for the department's vice crimes division, which includes the prostitution and gambling bureau and the narcotics bureau.

nance to apply to businesses such as legal referral services and would not so enforce the ordinance unless, after investigation of a citizen complaint, it appeared that the business was "actually operating" as the type of business that generally advertizes itself as an "escort service."

Against appellants' showing, respondents offered the declaration of Captain Philpott, which revealed the need to regulate escort services. Based on his four years combined experience as captain and commanding officer of the vice crimes division and as a lieutenant in charge of that division's prostitution and gambling bureau (see fn. 4, *ante*), he declared: "I formed the opinion that virtually every escort service operating in the City and County of San Francisco was a front for prostitution. In addition, I was aware that employees of escort services in San Francisco were frequently involved, during working hours, in activities which led to charges of theft or which involved missing persons, assault, and murder." He also recalled testifying as a police representative before the finance committee for the board of supervisors that regulation of escort services was needed: "I testified that escort services in San Francisco are frequently fronts for prostitution and provide an opportunity for theft, extortion and bodily harm against customers . . . ."

Absent a greater showing of harm to appellants and in light of the apparent harm that would befall the city and county if enforcement of the ordinance were enjoined, the trial court acted within its discretion in impliedly finding against appellants on the interim harm factor. Accordingly, we cannot consider the merits of appellants' constitutional arguments and must affirm the order appealed from. (*Cohen, supra,* 40 Cal.3d 277, 289.)

### DISPOSITION

The order of September 18, 1981, denying the application for preliminary injunction is affirmed.

Kline, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied March 6, 1986.