[No. D008383. Fourth Dist., Div. One. Aug. 30, 1989.]

SUNDANCE SALOON, INC., Plaintiff and Appellant, v.
CITY OF SAN DIEGO, Defendant and Respondent.

COUNSEL

Thomas F. Homann for Plaintiff and Appellant.

John W. Witt, City Attorney, Ronald L. Johnson and Eugene P. Gordon, Chief Deputy City Attorneys, and Steven R. Gustavson, Deputy City Attorney, for Defendant and Respondent.

OPINION

**BENKE, J.**—Sundance Saloon, Inc. (Sundance), a business licensed as a cabaret by the City of San Diego, filed a complaint pursuant to 42 United States Code section 1983 to enjoin the enforcement of San Diego Municipal Code[1] section 33.1501.15, requiring cabarets, with certain exceptions, to close between the hours of 2 a.m. and 6 a.m. A cabaret is defined by the Municipal Code as a commercial establishment that serves alcoholic beverages and allows or provides entertainment. (§ 33.1501, subd. (c)(1).) Sundance argued that providing entertainment is an activity protected by the free speech guaranties of both the federal and state Constitutions. Sundance asserted the municipal ordinance in question was an unjustified abridgement of that right and should be enjoined.

Simultaneously with the filing of its complaint, Sundance filed a motion for a temporary injunction to enjoin the enforcement of the ordinance

---

[1] All statutory references are to the San Diego Municipal Code unless otherwise specified.

pending the resolution of its 1983 action. The motion was denied and it is from that denial Sundance appeals.

## DISCUSSION

In considering a motion for a preliminary injunction, the trial court evaluates two related questions: first, the harm the plaintiff is likely to suffer if the injunction is denied compared to the harm the defendant is likely to suffer if the injunction is issued; and second, the likelihood the plaintiff will prevail on the merits at trial. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840]; *Graf* v. *San Diego Unified Port Dist.* (1988) 205 Cal.App.3d 1189, 1194 [252 Cal.Rptr. 889].)

At the outset of the hearing below, the trial court explained its tentative ruling denying Sundance relief: "I wasn't persuaded that in light of what I considered to be a reasonable purpose of this municipal code section to control noise and public disturbances after reasonable closing hours of two a.m., that limitation for four hours to the day on social dancing was an infringement on the First Amendment freedom of expression, counsel.

"I wasn't persuaded that it was probable that you would recover or that you would prevail on that point. And consequently, I tentatively indicated a ruling to deny your request for preliminary injunction."

At the conclusion of argument, the court reiterated its conclusion concerning infringement of First Amendment rights and added: "With due respect to your view, I don't consider a restriction on operating a cabaret between the hours of two and six a.m. to be a broad brush approach to regulation of establishments of this kind, and I don't consider the ordinance to be an infringement on the First Amendment right of expression on the showing before me. I don't think there has been adequate showing that there is, in fact, any infringement on any First Amendment right such that it would justify granting the preliminary injunction on the basis of irreparable harm in light of the circumstances."[2]

The decision to issue or deny a preliminary injunction rests in the sound discretion of the trial court and the exercise of that discretion will not be disturbed on appeal absent abuse (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 286; *Graf* v. *San Diego Unified Port Dist., supra,* 205 Cal.App.3d at p. 1194.) The decision to deny a preliminary injunction is

---

[2] Sundance urges the trial court considered only the issue of likelihood of success on the merits and failed to determine irreparable harm. In light of the court's rulings, we conclude the lower court clearly reached both issues.

upheld on appeal if the reviewing court determines discretion was properly exercised on either question considered. (*Graf* v. *San Diego Unified Port Dist., supra,* 205 Cal.App.3d at p. 1194.)

In general a preliminary injunction may not be issued "[t]o prevent the execution of a public statute, by officers of the law, for the public benefit" or "[t]o prevent the exercise of a public or private office, in a lawful manner, by the person in possession." (Civ. Code, § 3423; Code Civ. Proc., § 526.) ▪ " 'While these general strictures do not preclude the issuance of preliminary injunctive relief when the constitutionality of a statute or ordinance is challenged, nevertheless, ". . . trial courts should be extremely cautious . . . [when asked] to enjoin law enforcement officials from enforcing an ordinance obviously approved and adopted by duly elected representatives of the people for the purpose of promoting and protecting public morality *prior to a trial on the merits*." (Italics in original.) (*City of Santa Monica* v. *Superior Court,* [(1964 231 Cal.App.2d 223,] 226.)' [Citation.]" (*Cohen* v. *Board of Supervisors* (1986) 178 Cal.App.3d 447, 453 [225 Cal.Rptr. 114].)

With these general principles in mind we proceed to review the ordinances in question and determine whether the trial court abused its discretion in denying the preliminary injunction.

A. *Cabarets and the San Diego Municipal Code*

Article 3, division 15 of the San Diego Municipal Code deals with the licensing and regulation of cabarets and dance halls. The code defines a cabaret as "any commercial establishment where alcoholic beverages are served or dispensed and which features, allows or provides live entertainment. A cabaret may permit patron dancing without obtaining a public dance permit, subject to the requirements of this Article." (§ 33.1501, subd. (c)(1).)

In justifying its detailed regulation of cabarets, the Municipal Code sets out this declaration: "The Council of The City of San Diego finds that the operations of cabarets, public dances and dance halls, as defined in this Division, present an environment with the demonstrated potential for excessive noise generation and disorderly conduct by patrons, particularly at closing times, with the attendant adverse public safety impact on the surrounding business and residential community. Therefore, it is the purpose and intent of this Division that the operations of cabarets, public dances and dance halls shall be regulated as a matter of public safety through the issuance of a police permit by the Chief of Police, and to require the operators thereof as a condition of the issuance of the permit to be responsible for

patron conduct upon and in the vicinity of the licensed premises and to make adequate provisions for security, crowd control and patron conduct so as to curb and minimize disturbances as a result of the operation of the permitted premises, as specified in Section 33.1570." (§ 33.1501, subd. (a).)

Division 15 of the code provides regulations for the operation of cabarets, including requirements that operators not allow underage or intoxicated persons to remain on the premises or in any parking lot or similar facility made available to patrons (§ 33.1501, subd. (d)(2)), that entertainers be of a certain age and perform from a stage from which patrons are excluded (§ 33.1501.2), that adequate lighting be provided (§ 33.1501.16), and that employees of the cabaret not leave the premises with a customer during the hours of employment (§ 33.1501.5).

Central to the present case is section 33.1501.15 dealing with closing hours. The section states: "All cabarets shall be closed and all patrons and guests shall vacate the licensed premises between 2:00 a.m. and 6:00 a.m., except for cabarets that have been issued a special permit by the Chief of Police to operate between 2:00 a.m. and 6:00 a.m., provided all the following conditions are met:

"(a) That any operation thereof after 2:00 a.m. shall not conflict with any zoning law or conditional use permit;

"(b) That the establishment is more than 300 feet from any single family or multi-family residence, other than commercial hotels, motels and similar establishments for temporary lodging, measured by a straight line between the closest structural wall of the residence and the closest property line of the establishment;

"(c) That the licensed premises have not been operated in violation of law during the proceeding six months.

"Any special permit issued under this section may be revoked for any violation of law or this Code reasonably related to the hours and conditions of operation."

B. *Analysis of Relative Harm*

As noted above, in considering a motion for preliminary injunction, the trial court must compare the likely harm done the plaintiff if the preliminary injunction is denied with the likely harm done the defendant if the

injunction is issued. ■ Here the trial court concluded appellant made an inadequate showing of harm if the injunction was denied. We agree.

■ Sundance maintains, and we agree, that an ordinance setting closing hours for an establishment providing live entertainment raises free speech issues under both the federal and state Constitutions. (See *Schad* v. *Mount Ephraim* (1981) 452 U.S. 61, 65 [68 L.Ed.2d 671, 678, 101 S.Ct. 2176]; *People* v. *Glaze* (1980) 27 Cal.3d 841, 845-847 [166 Cal.Rptr. 859, 614 P.2d 291].)

■ Sundance argues the fact a constitutionally challenged ordinance or statute impinges on freedom of speech automatically establishes irreparable damage and makes unnecessary further consideration of relative harm. Sundance cites as authority for this proposition *Elrod* v. *Burns* (1976) 427 U.S. 347, 373 [49 L.Ed.2d 547, 565, 96 S.Ct. 2673]; *American Booksellers Assn., Inc.* v. *Superior Court* (1982) 129 Cal.App.3d 197, 206 [181 Cal.Rptr. 33]; and *Ebel* v. *City of Corona* (9th Cir. 1983) 698 F.2d 390, 393. We add to the list *Ketchens* v. *Reiner* (1987) 194 Cal.App.3d 470, 480 [239 Cal.Rptr. 549].

We agree that, viewed with an uncritical eye, statements in the foregoing authorities might lead one to believe the United States Supreme Court has concluded any infringement upon the First Amendment right to freedom of expression automatically results in irreparable harm. Such statements, however, when examined closely, reflect only the use of language which is meant to underscore the significance of the First Amendment, not create a rule of law which is so inflexible as to preclude application of state policing practices which are narrowly drawn and legitimately designed to preserve the very law and order without which the First Amendment would quickly become a nullity.

The origin of Sundance's argument is *Elrod* v. *Burns, supra,* 427 U.S. at page 373 [49 L.Ed.2d at page 565]. *Elrod,* a plurality opinion in which only three justices joined, involved the claim by noncivil-service employees of the Sheriff's Office of Cook County, Illinois, that, after the Democratic candidate was elected sheriff, they had been or were faced with imminent discharge solely because they were not affiliated with or sponsored by the county Democratic Party. The opinion found the patronage system placed a severe restriction on the employees' First Amendment right to freedom of political belief and association. After noting the district court had denied the request for a preliminary injunction because it found no sufficient showing of irreparable harm, the opinion observes that some of the employees had been threatened with discharge while others had agreed to provide

support to the Democratic party to avoid discharge. The plurality then states: "It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury. See *New York Times Co. v. United States* 403 U.S. 713 (1971)." (*Elrod* v. *Burns* 427 U.S. at p. 373 [49 L.Ed.2d at p. 465].)[3]

Case law has seized upon the foregoing language in *Elrod*. Responding to the trial court's finding that no irreparable harm was demonstrated, the court in *American Booksellers Assn., Inc.,* stated: "The irreparable harm which mandates issuance of the preliminary injunction in the instant case is the pervasive chilling effect which the ordinances have on the exercise of free speech, and is not limited to the petitioners before the court." (*American Booksellers Assn., Inc.* v. *Superior Court, supra,* 129 Cal.App.3d at p. 206.)

Thus, in *Ketchens* v. *Reiner, supra,* 194 Cal.App.3d at pages 473-475, the court considered the prosecution of a parent under two sections of the Education Code which made it a crime to insult a teacher in the presence of a pupil or to abuse a teacher in the presence of other school personnel or pupils. The parent sought a preliminary injunction to enjoin prosecution under the sections claiming they were unconstitutionally vague and overbroad. The court concluded the statutes were so broad in their definition of the insult or abuse covered that they could be applied to protected speech. Based on this conclusion the court found it was likely the parent would prevail on their challenge to the statute. (*Id.* at pp. 474-477.)

In dealing with the issue of irreparable harm, the court stated: "The question is not a close one. 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' (*Elrod* v. *Burns* (1976) 427 U.S. 347, 373 [49 L.Ed.2d 547, 565, 96 S.Ct. 2673]; *New York Times Co.* v. *United States* (1971) 403 U.S. 713; *American Booksellers Assn., Inc.* v. *Superior Court* (1982) 129 Cal.App.3d 197, 206 [181 Cal.Rptr. 33].)" (*Ketchens* v. *Reiner, supra,* 194 Cal.App.3d at p. 480.)

Likewise, in *Ebel* v. *City of Corona, supra,* 698 F.2d at pages 391-393, a case dealing with the denial of a preliminary injunction, the City of Corona

---

[3]The plurality's citation to *New York Times Co.* v. *United States* (1971) 403 U.S. 713 [29 L.Ed.2d 822, 91 S.Ct. 2140] is curious. In that case the federal government sought to enjoin the publication of a classified study, "History of U.S. Decision-Making Process on Viet Nam Policy." In a three-paragraph *per curiam* decision, the court held that a heavy burden falls on the government when it seeks to impose a prior restraint on speech. The court agreed with the district and circuit courts that the government had not met that burden. (*Id.* at p. 714.)

adopted ordinances restricting sellers of sex-oriented materials to certain commercial zones. Ebel, who ran the only establishment in the city coming under the ordinances, was informed she would have to move her store. Federal law allowed the issuance of an injunction based on an analysis of probable success at trial and the possible harm resulting from failing to grant the injunction. (*Id*. at p. 392.) The court noted that while properly drawn ordinances restricting sex-oriented businesses to certain zones or locations were permissible (see *Young* v. *American Mini Theaters* (1976) 427 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440]), the Corona ordinance arguably was directed simply at running Ebel's business out of town.

Addressing the question of hardship to Ebel if the preliminary injunction were denied, the court stated: "The hardships Ebel would face if the preliminary injunction were denied are much more serious than the temporary hardship the city would endure if the injunction were granted. If denied, Ebel's bookstore would be closed. She would have to bear the cost of relocation or lose her income. Because she asserts injury to her freedom of expression, the hardships are not merely monetary. 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' *Elrod* v. *Burns* 427 U.S. 347, 373.

"The city, on the other hand, has admitted at argument that it can point to no specific instances of harm from Ebel's bookstore remaining open pending trial on the merits." (*Ebel* v. *City of Corona, supra,* 698 F.2d at p. 393.)

In *American Booksellers Assn., Inc.* v. *Superior Court, supra,* 129 Cal.App.3d at pages 199-201, a case involving the denial of a preliminary injunction, the court dealt with city ordinances which restricted the display for commercial purposes of certain sexually explicit material when such material " 'has as its primary purpose, design or effect sexual arousal, gratification or affront.' " (*Id*. at p. 200.) The ordinances did not allow such material to be openly displayed in any business open to minors unless sealed in a plastic wrapper in a manner which restricted it from being opened before sale. The ordinance further required that if sexually explicit matter appeared on the cover of the material, it had to be shielded from view. In addition, the ordinance provided that, if the subject material were not sealed or covered as required, the business was to post a warning that such material was on display and deny access to the establishment by minors unaccompanied by a parent or guardian. In an apparent effort to avoid state preemption, the ordinances state the term "harmful to minors" has no application to the ordinances. The court concluded that based on this exclusion the ordinances were directed only to material which was not obscene as

to minors and from which minors could not be totally denied access. (*Id*. at pp. 201-203.)

In finding the ordinances unconstitutional, the court stated: "In sum, the ordinances are overbroad because to the extent that they require sealing or removal from reach, they deny access to adults as well as to children and to the extent they require exclusion of minors from retail premises they deny minors access to items which they have an unfettered constitutional right to enjoy." (*American Booksellers Assn., Inc.* v. *Superior Court, supra,* 129 Cal.App.3d at p. 205, fn. omitted.)

We do not believe Sundance's authorities support the proposition that simply because an ordinance affects the right of free speech, its enforcement results invariably in such a deprivation of rights that no consideration need be given to the degree of deprivation caused or the effect of enjoining the enforcement of the ordinance.

In each of the cases cited by Sundance, the effect of the challenged ordinance or statute was highly burdensome to the exercise of a First Amendment right. Nor do the ordinances or statutes at issue in these cases deal with policing functions, like those in the present case, which frequently involve competing rights and interests. Further, none of the cases purports to fully develop or analyze the question.

We find in none of these cases either a legal or logical compulsion for a universal rule that in considering the grant or denial of a preliminary injunction, an analysis of comparative harm is unnecessary where an ordinance or statute impinges on First Amendment rights.

First Amendment issues notoriously involve a clash between the duty of government to protect us from each other and the role of the constitution to protect us from the government. In any given case the harm done to the general citizenry by enjoining laws adopted by them or their elected representatives must be compared to the harm done an individual or the citizenry itself by allowing the law to operate without restraint. ■ As we will outline in the next section, courts have repeatedly found that time, place and manner restrictions on fundamental rights are justified when narrowly drawn and when adopted for legitimate governmental reasons. ■ This being the case, it is illogical to rotely and routinely enjoin the enforcement of all laws affecting free speech without the imposition of human judgment to evaluate the competing interests.

We do not quarrel with the finding in the above cases relying on *Elrod* that, on the facts there presented, irreparable harm would result if the

courts did not enjoin the practice, ordinance or statute involved. ■ The present case, however, is very different. Significantly, the closing ordinance here is benign. The ordinance is content neutral, making no attempt to affect the types of entertainment presented. It allows entertainment to be presented 20 hours a day. It allows a cabaret to obtain a permit to operate for 24 hours a day if the establishment meets certain location and legal compliance restrictions. While we agree that an ordinance requiring a business which provides entertainment to close for certain hours during the day impinges on First Amendment rights, we think the impingement here is minimal and the overall effect on expression is slight. (See *Ward* v. *Rock Against Racism* (1989) 491 U.S. __ [105 L.Ed.2d 661, 678-683, 109 S.Ct. 2746].)

Compared to this slight deprivation of rights is the finding of the San Diego City Council that cabarets have a demonstrated potential for excess noise and disorderly conduct by patrons with an attendant adverse public safety impact on the surrounding business and residential community. There is nothing facially irrational about this conclusion. The council further concluded the community dangers presented could be alleviated by regulating cabarets and by imposing closing hour regulations.

We conclude the trial court properly could decide whether the potential harm which might be suffered by the city if cabaret closing hour regulations are enjoined would be greater than the harm suffered by Sundance, its entertainers and patrons if the cabaret is required to be closed from 2 a.m. to 6 a.m. pending the resolution of the 1983 action. The preliminary injunction, therefore, was properly denied.

C. *Likelihood of Success at Trial*

In considering a motion for preliminary injunction, the trial court must also consider the likelihood the plaintiff will be successful when the ultimate issues in the case are tried. Here, the trial court concluded it was unlikely Sundance would prevail at trial. Appellant challenges that finding. Thus, although we have concluded the preliminary injunction was properly denied based on the trial court's conclusion no irreparable harm would be visited upon Sundance by that denial, we nonetheless consider the issue of the likely success of Sundance's ultimate action.

■ The method of analysis applicable to such issues is defined in *People* v. *Glaze, supra,* 27 Cal.3d at pages 845-846. The court noted that, in general, a municipality has the power to regulate commercial businesses where the regulations are reasonable and nondiscriminatory. Reasonability exists

as long as there is a clear relationship between the regulation and the protection of public health, safety, morals or general welfare. ■ However, when a regulation, not uniformly applicable to all businesses, involves a restriction on rights protected by the First Amendment, a higher standard of review is applied. This test requires the government to show that the regulation is narrowly and explicitly drawn and necessary to further a legitimate government interest. (*Ibid.*)

In *Clark* v. *Community For Creative Non-violence* (1984) 468 U.S. 288, 293 [82 L.Ed.2d 221, 227, 104 S.Ct. 3065], the court stated: "Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions. We have often noted that restrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." (See also *Ward* v. *Rock Against Racism, supra,* 491 U.S. at pp. __-__ [105 L.Ed.2d at pp. 674-676].)

In *Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860 [94 Cal.Rptr. 777, 484 P.2d 945], the court, in reviewing the validity of an ordinance requiring parade permits stated: "In determining whether a statute regulating speech violates the First Amendment, we must weigh the state's interest in maintaining peace and order in the streets and other public places against the individual's right to freedom of speech and assembly. When this balance is struck, statutes requiring licenses for parades and demonstrations will not offend the Constitution if they regulate only the time, place, manner and duration of the marches and if they are fairly administered by officials within the range of narrowly limited discretion." (*Id.* at p. 869.)

Perhaps the classic statement as to when time, place, and manner restrictions on protected speech are proper was made by Justice Warren in *United States* v. *O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673]: "[A] government regulation is sufficiently justified if it is within the constitutional power of the government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

In the present case, it is for the most part conceded the City of San Diego has the constitutional power to regulate cabarets and that doing so furthers substantial governmental interests. No claim is made the closing hour

regulation affects the content of speech. Nor is it argued that a requirement a cabaret be closed for four hours per day, when it either cannot or has not secured a permit to remain open for those additional four hours, forecloses ample alternative channels for the presentation of entertainment. ■ The key question in this case is whether the incidental restriction on First Amendment rights inherent in the closing hour regulation is essential to the furtherance of the claimed justification for the regulation.

Sundance argues the resolution of this issue in its favor is dictated by *People* v. *Glaze, supra,* 27 Cal.3d 841. While we agree the facts in *Glaze* are superficially similar to those in this case, they are nonetheless distinguishable. The issue in *Glaze* was stated as follows: "Under the California Constitution, may a city pass an ordinance which requires only picture arcades to close between the hours of 2 a.m. and 9 a.m. in order to prevent the possibility of masturbation by any of their customers?" (*Id.* at pp. 843-844.)

The issue in *Glaze,* as in this case, was whether the city had proved its ordinance was narrowly drawn and necessary to its legitimate governmental interest. The city claimed the closing hour regulation was reasonable since it helped prevent masturbation during hours when law enforcement problems are greatest. The court rejected the claim. It stated the ordinance, by simply arresting the offenders, undertook a method of enforcement that curtailed the First Amendment rights of others rather than dealing with the objectionable conduct directly. (*People* v. *Glaze, supra,* 27 Cal.3d at pp. 846-848.)

The court also found the ordinance overbroad in that it failed to regulate only those picture arcades that have been or are likely to be havens for masturbation. The court noted the regulation required the closing not only of peep shows with many picture booths but also bookstores with only a few motion picture machines and even arcades showing Mickey Mouse cartoons. (*People* v. *Glaze, supra,* 27 Cal.3d at pp. 848-849.)

While we readily agree the paramount importance of constitutionally protected rights justifies a requirement that legislation incidentally affecting those rights be narrowly drawn, we also recognize the difficulties inherent in using such a standard. As Justice Blackmun said in a concurring opinion in *Illinois Elections Bd.* v. *Socialist Workers Party* (1979) 440 U.S. 173, 188-189 [59 L.Ed.2d 230, 244, 99 S.Ct. 983]: "A judge would be unimaginative indeed if he could not come up with something a little less 'drastic' or a little less 'restrictive' in almost any situation, and thereby enable himself to vote to strike legislation down."

■ When constitutionally protected rights are involved, courts do not owe to legislative action the same deference accorded in less sensitive areas.

(*Spiritual Psychic Science Church* v. *City of Azusa* (1985) 39 Cal.3d 501, 514 [217 Cal.Rptr. 225, 703 P.2d 1119].) Still, especially in the context of a motion for preliminary injunction, when the issues have not yet been tried, courts should not too readily discount the stated need for and justifications expressed by legislative bodies in support of laws even when those laws incidentally affect First Amendment rights.

 A closing hour regulation implemented in order to control masturbation is far different than a closing regulation designed to help control the potential for excessive noise and disorderly conduct associated with cabarets. The control or failure to control masturbation seldom has an immediate impact on the community and the policing problems involved with it are narrow. On the other hand the generation of excessive noise and the potential for disorderly conduct by the patrons of establishments that serve alcoholic beverages and provide live entertainment are often immediate, intrusive and dangerous to control.

In *7978 Corporation* v. *Pitchess* (1974) 41 Cal.App.3d 4 [115 Cal.Rptr. 746]2, the court, dealing with closing-hour regulations for establishments allowing dancing or providing entertainment stated "the county could justifiably conclude that by reason of particular circumstances of noise and public congregation the activities that accompany plaintiffs' type of business present special problems that require special regulation." (*Id*. at p. 48.) The court also stated: "We cannot say that the closing hours imposed on plaintiffs' business are arbitrary or unreasonable. The county could justifiably conclude that public dancing and public entertainment 'at such late hours would tend to attract and congregate evilly disposed persons at hours when the [county] would be least prepared with police to guard against the acts of such persons.' (*City of Chicago* v. *Green Mill Gardens, supra,* (1923) 137 N.E. 126, 128.) The county could also conclude that during a portion of the 24-hour day the desires of those who seek to present public entertainment around the clock should yield to the wishes of those who seek peace and quiet in the small hours of the morning. As further evidence of the reasonableness of the regulated hours, we note that the closing hours correspond precisely with the hours during which alcoholic beverages may not be sold. (Bus. and Prof. Code, § 25631.)" (*Id*. at p. 47.)

While Sundance is correct that more narrow regulations, requiring, for example, the hiring of security guards, the removal of disorderly patrons and the promulgation of noise restrictions, all more directly address the evils perceived by the council, we do not believe the government is foreclosed from adopting regulatory schemes that not only deal with problems after they exist but also attempt to reasonably remove the potential for such

problems. (See *Ward* v. *Rock Against Racism, supra,* 491 U.S. at pp. ___-___ [105 L.Ed.2d at pp. 678-683].) That the police can deal with disruptions of the peace or close establishments after the fact is insufficient. Prevention of disorder is a reasonable goal of the subject ordinance.

In this case Sundance laments the serious deprivation of its and others right to free expression caused by the requirement it and other cabaret owners close their establishments four hours a day. Viewed as a whole, however, we believe the ordinance in question is a reasonable and narrowly drawn device which compromises well the desire of some for constant and unending entertainment and the desire of others for a reasonable assurance of peace and quiet in the early morning hours. Not only does the section allow cabarets to be open 20 hours a day, it allows cabarets to remain open 24 hours a day if they are located in areas where the potential for disruption to residences and other businesses is slight and where they have demonstrated by their adherence to the law that they are responsibly operated. The trial court did not abuse its discretion in determining it was unlikely Sundance would prevail at trial.

The order denying the motion for preliminary injunction is affirmed.

Huffman, J., concurred.

**WIENER, Acting P. J.,** Dissenting.—I view this case in far less dramatic terms than my colleagues. I see it as a relatively routine appeal in which we are called upon to apply established precedent to the factual record before us. Burdened with this mind-set I am puzzled why the majority finds it necessary to decide this case on two independent grounds, one of which creates a confusing opaqueness in settled law.

The settled law to which I refer consists of *Elrod* v. *Burns* (1976) 427 U.S. 347, 373 [49 L.Ed.2d 547, 565, 96 S.Ct. 2673], *Ebel* v. *City of Corona* (9th Cir. 1983) 698 F.2d 390, *Ketchens* v. *Reiner* (1987) 194 Cal.App.3d 470 [239 Cal.Rptr. 549], and *American Booksellers Assn., Inc.* v. *Superior Court* (1982) 129 Cal.App.3d 197 [181 Cal.Rptr. 33]. Each of these cases says that "the loss of First Amendment freedoms, for even a minimal period of time, unquestionably constitutes irreparable injury." (See also *Gutierrez* v. *Mun. Ct. of S.E. Judicial Dist.* (9th Cir. 1988) 838 F.2d 1031, 1045; *Pacific West Cable Co.* v. *City of Sacramento, Cal.* (9th Cir. 1986) 798 F.2d 353, 355; *San Diego Committee* v. *Governing Bd.* (9th Cir. 1986) 790 F.2d 1471, 1473; *Goldie's Book Store* v. *Superior Court* (9th Cir. 1984) 739 F.2d 466, 472.) Unlike my colleagues I am unable to treat this statement as a stylistic device used solely to "underscore the significance of the First Amendment" (maj.

opn. *ante,* p. 814) when there is no authority, federal or state, which even hints that the United States Supreme Court did not mean exactly what it said and said exactly what it meant. In addition to my questions concerning the correctness of the majority's view, I also question the need in the context of this case for a state intermediate appellate court to depart from precedent and treat a phrase articulating a fundamental principle of First Amendment law as essentially judicial puffing.

My disagreement with the majority on the question of irreparable harm does not mean that I think the injunction should have automatically issued. All it means is that the trial court was required to consider the second factor—Was the ordinance an invalid regulation of time, place or manner of protected speech?

Because First Amendment rights are involved, the burden on this issue rests with the city to show that the ordinance is narrowly tailored to serve the legitimate and substantial content-neutral governmental interests. (*Ward* v. *Rock Against Racism* (1989) 491 U.S. __ [105 L.Ed.2d 661, 678-683, 109 S.Ct 2746].)

Whether the city will be able to make the required showing at trial is not before us. I suspect that if this case were fully tried, the record would be considerably different than it is now with far more information relating to the city's reasonable efforts to curtail the alleged offensive conduct. Notwithstanding the subjective conclusions of the majority, the present record is devoid of such information. The only evidence presented by the city to the trial court is the police detective's single hearsay declaration concerning area residents' complaints about noise from patrons outside the bar when it was operated by previous owners. Nowhere does the city confront the question of whether the ordinance was substantially broader than necessary to achieve the government's interest. This omission is particularly significant—and I believe determinative—when even the majority acknowledges that more narrow regulations could have accomplished the purpose of the challenged enactment (maj. opn. *ante,* p. 821). Lacking the requisite evidence on this issue, there is simply no legal basis on which the majority can say as a matter of law that the challenged ordinance is sufficiently narrow.

The majority cannot rectify this significant omission by merely relying on its personal views or the purpose of the ordinance as stated in its preamble. As to the first basis, the defect is self-evident. As to the latter, the city council's recitation of the problem does not answer the essential question which we must decide—whether the ordinance has been properly tailored

to serve the governmental interest. By treating the council's conclusionary statement as evidence and deferring to the council's perceptions, the majority improperly subordinates the judicial role to the executive/legislative branches of government. In so doing the majority has relinquished the role of the judiciary in protecting First Amendment rights.

Based on the narrow ground that the city has failed to carry its burden at this stage of the case I conclude the court erred in denying the preliminary injunction. I would therefore reverse the order.[1]

---

[1] It should also be noted that Sundance Saloon, Inc. has not only lost its right to a preliminary injunction but, in light of the scope of this ruling, has also lost its right to a trial on the merits. In the circumstances of this case for the majority to have converted a preliminary injunction proceeding to a full trial is manifestly unfair.