Filed 11/17/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CYNTHIA CERLETTI et al., | B306122 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV16321) |
| v. | |
| GAVIN NEWSOM, as Governor, etc., et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County, Samantha P. Jessner, Judge.  Dismissed.

Judicial Watch Inc. and Robert Patrick Sticht for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Thomas S. Paterson, Assistant Attorney General, Paul Stein and Anna Ferrari Deputy Attorneys General, for Defendants and Respondents.

———————————————

Plaintiffs appeal from the trial court's denial of a temporary restraining order to stay government spending in connection with a particular one-time benefit program. The spending has already occurred, and there is no indication it will be reauthorized. We therefore dismiss the appeal as moot.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Cynthia Cerletti and Howard A. Myers brought this taxpayer action to declare as illegal, and permanently enjoin, spending under the Disaster Relief for Immigrants Project.

1. ***The Challenged Project***

On March 4, 2020, Governor Gavin Newsom declared a state of emergency due to the worldwide spread of COVID-19. On March 16, 2020, the California Legislature enacted an emergency amendment to the Budget Act of 2019, appropriating $500 million, and authorizing additional disbursements not to exceed $1 billion in total, for any purpose related to the state of emergency upon order of the Director of Finance. (Stats. 2020, ch. 2.) Funds could not be expended prior to 72 hours after the Director of Finance notified the Joint Legislative Budget Committee in writing of the purpose of the planned expenditure. (*Ibid.*) In other words, the Legislature allowed for expenditure on emergency projects on the approval of the Director of Finance, with notice to the Legislature, but without requiring statutory approval of each individual project.

On April 15, 2020, Governor Newsom announced the Disaster Relief Assistance for Immigrants Project (the Project). which established a $75 million Disaster Relief Fund to "support undocumented Californians impacted by COVID-19 who are ineligible for unemployment insurance and disaster relief,

2

including the CARES Act,[1] due to their immigration status." The Governor's press release explained:

"Approximately 150,000 undocumented adult Californians will receive a one-time cash benefit of $500 per adult with a cap of $1,000 per household to deal with specific needs arising from the COVID-19 pandemic. Individuals can apply for support beginning next month. [¶] The state's Disaster Relief Fund will be dispersed through a community-based model of regional nonprofits with expertise and experience serving undocumented communities."

This was to be funded both by reappropriating some funds already allocated for assistance to immigrants and by an additional appropriation under the emergency amendment to the Budget Act. As to the latter, the Director of Finance notified the Joint Legislative Budget Committee of the planned expenditure, and the Joint Legislative Budget Committee concurred with it. We need not discuss the funding sources in detail; what is relevant for an understanding of the case is that the Project was not itself specifically and directly authorized by statute.

The Department of Social Services administered the Project. On April 17, 2020, it issued a fact sheet, which stated the $79.8 million funding would be allocated $75 million in benefits and $4.8 million in anticipated administrative costs.

---

1    In March 2020, the federal government enacted the so-called "CARES Act," (the Coronavirus Aid, Relief, and Economic Security Act) which, among other things, provided for direct economic assistance payments to certain Americans. (Pub.L. No. 116-136, § 2201 (Mar. 27, 2020) 134 Stat. 281.)

## 2.    *Plaintiffs' Complaint*

On April 29, 2020, plaintiffs, as taxpayers, filed suit challenging the Project as an unlawful expenditure of public funds.[2] (Code Civ. Proc., § 526a.) The named defendants are Governor Newsom, in his official capacity, and Kim Johnson, in her official capacity as Director of the Department of Social Services. The complaint's rationale was this: Federal law provides that undocumented immigrants are not eligible for State public benefits, with certain exceptions.[3] (8 U.S.C. § 1621(a).) "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible under subsection (a) only through the enactment of a State law after the date of the enactment of this Act [Aug. 22, 1996] which affirmatively provides for such eligibility." (8 U.S.C. § 1621(d).) Plaintiffs alleged that, as the Project was not enacted by a State law, it violated the limitations of federal law, and its benefits therefore constituted the illegal expenditure of public funds.

## 3.    *Plaintiffs' Ex Parte Application for a Temporary Restraining Order*

On May 4, 2020, plaintiffs filed an ex parte application for a temporary restraining order, and order to show cause regarding

---

[2]    The action was initially pursued in the name of a different plaintiff, Robin Crest. An amended complaint was later filed, replacing Crest with Cerletti.

[3]    The federal statute uses the term "alien." While this appeal was pending, California enacted legislation removing the word "alien" from our statutes. (Stats. 2021, ch. 296, § 1.) We follow the lead of our Legislature, and use "undocumented immigrant."

4

a preliminary injunction.  Specifically, they sought to halt the distribution of benefits under the Project.  They argued, "Without a restraining order, those funds will be spent, and there is no way of recovering them after they are distributed."  Plaintiffs added, "Once the direct cash benefits are distributed to unlawfully present aliens in violation of federal law, the injury cannot be remedied."

Defendants opposed the application on a number of grounds, including that prejudgment injunctive relief is not ordinarily available to remedy an alleged harm based on taxpayer standing.  (E.g., *White v. Davis* (2003) 30 Cal.4th 528, 556-557.)

On May 5, 2020, the court heard argument and denied the ex parte application "for the reasons set forth in the opposition papers.  The court finds that plaintiffs have not met their burden to support the requested relief."

4. ***Plaintiffs Sought Immediate Relief Via Mandate***

On May 14, 2020, plaintiffs filed a petition for writ of mandate, seeking a writ "commanding Respondent to issue a temporary restraining order restraining and enjoining Real Parties in Interest from making an **imminent, May 18, 2020** illegal expenditure of $79.8 million of taxpayers' funds pending the final determination of a taxpayer action brought by Petitioners in the lower court."  (*Cerletti v. Superior Court,* No. B305922.)  On May 18, 2020, we denied the petition, indicating that a ruling on a temporary restraining order is appealable and plaintiffs had made an inadequate showing to justify relief by way of mandate.[4]

---

[4]      We also observed the sole argument in the petition had already been presented by means of an emergency writ petition

5

### 5.    *Plaintiffs' Appeal*

On May 21, 2020, plaintiffs filed a timely notice of appeal from the denial of the temporary restraining order.  (Code Civ. Proc., § 904.1, subd. (a)(6) [an appeal may be taken from an order refusing to grant an injunction].)

### 6.    *Plaintiffs Petitioned for Supersedeas*

On May 29, 2020, plaintiffs filed, in this appeal, a petition for writ of supersedeas, and sought an immediate stay of both the order denying their temporary restraining order and the Project itself.  In their supersedeas petition, they repeatedly argued that a writ of supersedeas was necessary to preserve their appellate rights.  For example, "Because this appeal is from an order denying a temporary restraining order, a writ of supersedeas is Petitioners' only remedy to preserve that right.  *See People ex rel. S.F. Bay etc.* [(1968)] 69 Cal.2d [533,] 536-537 (once trial court had dissolved its restraining order, writ was required to prevent town from resuming its fill operations and rendering appeal moot)."  On June 12, 2020, we denied the petition for writ of supersedeas, citing to *White v. Davis, supra,* the California Supreme Court case which states that taxpayer harm is ordinarily insufficient to establish irreparable harm warranting preliminary injunctive relief.

### 7.    *The Money Is Spent*

While the parties were briefing the appeal, the Project went ahead.  Defendants asked the court to take judicial notice of an exhibit demonstrating that all $75 million in project benefits

---

to our Supreme Court, which had summarily denied it.  (*Benitez v. Newsom*, S261804.)

were distributed as of August 17, 2020.[5]  In their reply brief, plaintiffs did not challenge that representation, and made an argument based on the premise that "according to Respondents' brief, the cash benefits were not fully distributed until as late as August 17, 2020."  In its supplemental letter brief to this court, plaintiffs wrote, "The present appeal is not moot despite Respondents' expenditure of all of the project funds."[6]

We sought additional briefing on whether, now that the funds have been disbursed, plaintiffs' appeal of the trial court's failure to restrain that disbursement is moot.

## *DISCUSSION*

"It is well settled that an appellate court will decide only actual controversies.  Consistent therewith, it has been said that an action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events." (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10.)  These principles apply to appeals of orders denying preliminary

---

[5]  Defendants' request for judicial notice is granted.

[6]  In reply to defendants' letter brief, however, plaintiffs now suggest that, in some ways, the Department of Social Services "is continuing to spend taxpayer funds and resources on the project" – including, for example, obtaining the return of some funds that were distributed to recipients on debit cards which the recipients failed to timely activate.  We reject plaintiff's attempt to reverse course.  Plaintiffs sought a temporary restraining order to enjoin the government from distributing one-time emergency benefits under the Project; that money has been spent.  Plaintiffs cannot now avoid mootness by claiming they sought to enjoin the government from cleaning up the Project after the benefits have been distributed.

7

injunctions.  (*Ibid.*)  "An appeal from an order denying an injunction may be dismissed as moot if the act sought to be enjoined is performed while the appeal is pending.  [Citation.]" (*City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1031; see also *Disenhouse v. Peevey* (2014) 226 Cal.App.4th 1096, 1103 [courts will not consider the merits of an application to enjoin a meeting that already occurred]; *County of Los Angeles v. Butcher* (1957) 155 Cal.App.2d 744, 746 [whether an injunction restraining the sale of property should be granted is moot when the property has been sold].)

On the record before us, the Project provided for "one-time" payments, and the payments were made more than a year ago. The issue of whether the trial court should temporarily restrain the distribution of payments pending litigation is moot.

Relying on *City of Cerritos, supra,* 239 Cal.App.4th at page 1032, plaintiffs suggest that the case is not moot because "[e]quity lies to reinstate the status quo ante, meaning before Respondents' expenditure."  That authority is distinguishable.  In *City of Cerritos*, plaintiffs had sought to enjoin a law which required the dissolution of redevelopment agencies.  The court reasoned that the case was not moot, because, even though the lengthy winding-down process had commenced, a remedy could theoretically be crafted which would reactivate the agencies and restore their powers before the winding-down was complete. (*City of Cerritos, supra,* at pp. 1031-1032.)  Redevelopment agencies in the process of dissolution can be reinstated and funded in the future; thus, a remedy was possible.  But, here, plaintiffs are challenging a one-time expenditure of funds that have already been spent.  Plaintiffs make no effort to explain how time can be rewound and the funds recaptured.

8

A court may resolve an otherwise moot case if it raises an important issue likely to recur, but which regularly evades timely appellate review. (*White v. Davis, supra,* 30 Cal.4th at pp. 537, 563.) That is not this case. The Project was an emergency project to provide one-time payments during an extraordinary pandemic, which caused a state of emergency and a temporary pause in the operation of the Legislature; there is nothing in the record suggesting that it is likely to recur.[7]

Plaintiffs do not argue that this particular project could recur, but argue that the legal issue raised by their appeal does. Specifically, plaintiffs suggest we should address the issue, of public interest, of whether taxpayer harm should be considered sufficient to justify preliminary injunctive relief. "To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits. [Citation.]" (*White v. Davis, supra,* 30 Cal.4th at p. 554.) In *White v. Davis,* the California Supreme Court reviewed a number of cases addressing the issue, and noted they all came to the same conclusion: "Under the Court of Appeal decisions discussed above, a taxpayer's general interest in not having public funds spent unlawfully (including not having such

---

[7]     We observe that in July 2021, after the Legislature returned to session, it enacted further stimulus payments for Californians, including undocumented immigrants. That enactment contained the specific statutory language required by 8 U.S.C. § 1621(d), which plaintiffs contend was lacking from the Project. (Sen. Bill No. 139 (2021-2022 Reg. Sess.) § 5.) Plaintiffs cannot reasonably argue that further payments to undocumented immigrants will be made in emergency circumstances without express statutory authorization.

funds spent in alleged contravention of fundamental constitutional restrictions), while sufficient to afford standing to bring a taxpayer action under Code of Civil Procedure section 526a and to obtain a permanent injunction after a full adjudication on the merits, ordinarily does not in itself constitute the type of irreparable harm that warrants the granting of preliminary injunctive relief."[8] (*White v. Davis, supra,* at pp. 556-557.)

Plaintiffs ask that we bypass the mootness doctrine in order to disagree with *White v. Davis*, "depart from a rule that does not work, and begin a new way forward by recognizing that an illegal expenditure of public funds does more than just monetary harm to a taxpayer." Setting to one side whether we have jurisdiction to depart from a rule stated by our Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), we reject plaintiffs' premise that this legal issue typically evades appellate review. Not every government expenditure is a one-time payment on an emergency basis; whether taxpayers allege sufficient harm from allegedly illegal expenditures has, in fact, repeatedly been addressed in non-moot cases. (See, e.g., *Loder v. City of Glendale* (1989) 216 Cal.App.3d 777, 783-784 [challenging a city's employee drug testing program]; *Leach v. City of San Marcos* (1989) 213 Cal.App.3d 648, 660-663 [challenging a city's redevelopment plan], *Cohen v. Bd. of Supervisors* (1986) 178 Cal.App.3d 447, 454 [challenging an ordinance regulating escort services].) As the issue does not evade review, this is not an appropriate case in which to exercise

---

[8] *White v. Davis* left open the possibility that an extraordinary case may exist in which the taxpayer's interest is sufficient to justify injunctive relief. (*Id.* at p. 557.)

10

our discretion to reach the issue despite the mootness of the appeal.

## *DISPOSITION*

The appeal is dismissed as moot. Plaintiffs are to pay defendants' costs on appeal.


RUBIN, P. J.

WE CONCUR:


BAKER, J.


MOOR J.